# UNITED STATES DISTRICT COURT
## DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| WANDA OVALLES, INDIVIDUALLY AND P.P.A ADRIAN OVALLES AND WILSON OVALLES, | : | Case No. 3:14-CV-137-M-PAS |
| | : | |
| | : | |
| Plaintiffs, | : | |
| | : | |
| -v- | : | |
| | : | |
| SONY ELECTRONICS, INC., BEST BUY CO., INC., FOXCONN INTERNATIONAL, INC., AND JOHN DOE CORPORATIONS 1-4, | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| Defendants. | : | |

## REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF PLAINTIFFS' MOTIONS TO STRIKE OBJECTIONS AND COMPEL SUPPLEMENTAL DISCOVERY RESPONSES FROM SONY ELECTRONICS, INC.

## TABLE OF CONTENTS

**ARGUMENT** ..................................................................................................................1

I.  THRESHOLD ISSUES .................................................................................................1

    A.  Persons With Knowledge ........................................................................................1

    B.  Written Answers To Interrogatories.......................................................................2

    C.  Verifications Under Oath And In Proper Form .......................................................3

II.  RELEVANCY ISSUES ...............................................................................................4

    A.  Wanda Ovalles Document Request No. 5................................................................4

    B.  Wilson Ovalles Interrogatory No. 25 .....................................................................5

        1.  Sony Electronics Has Known Of The Defect For Almost Four Years ..................6

        2.  The Scope Requested By Plaintiffs Is Substantially Similar .................................6

        3.  Plaintiffs Do Not Seek To Impose An Undue Burden...........................................7

    C.  Wilson Ovalles Interrogatory No. 4........................................................................8

    D.  Wanda Ovalles Interrogatory No. 18 ......................................................................9

III.  KEY ISSUE OF CONTROL .......................................................................................9

    A.  Sony Electronics Mischaracterizes Plaintiffs' Argument on Control..........................9

    B.  Sony Electronics Does Not Comply With Federal Law .............................................10

    B.  Plaintiffs Have Established That A Nexus Should Exist .............................................11

**CONCLUSION** ..............................................................................................................**12**

# TABLE OF AUTHORITIES

**Cases**

*Ayers v. Continental*, 240 F.R.D. 216 (N.D. W. Va. 2007) ..............................................5

*Camden Iron v. Marubeni America Corp.,* 138 F.R.D. 438 (D.N.J. 1991) ...................................10

*Corvello v. New Engl. Gas,* No. Civ. A. 05-221T, 2008 WL 311123 (D.R.I. Feb. 1, 2008)....... 2-3

*Pascale v. G.D. Searle & Co.,* 90 F.R.D. 50 (D.R.I. 1981) ........................................................ 2-3

**Rules**

Fed. R. Civ. P. 33 .................................................................................................................... 2-3

**Statutes**

15 U.S.C. § 2051 ..............................................................................................................11

15 U.S.C. § 2052 ..............................................................................................................11

15 U.S.C. § 2064 ..............................................................................................................11

**Regulations**

16 C.F.R. § 1009.3 ..............................................................................................................11

16 C.F.R. § 1115.6 ..............................................................................................................11

16 C.F.R. § 1115.11 ..............................................................................................................11

16 C.F.R. § 1115.12 ..............................................................................................................11

16 C.F.R. § 1115.13 ..............................................................................................................11

**EXHIBIT LIST**

| EX | DESCRIPTION | DATES |
|----|-------------|-------|
| 30 | Additional Excerpts from SEL deposition transcript | 04/23/2015 |
| 31 | C. Hendricks, N. Williard, S. Mathew, M. Pecht, A failure modes, mechanisms, and effects analysis (FMMEA) of lithium-ion batteries, J. Power Sources 297 (2015) 13-120 | 07/10/2015 |
| 32 | CPSC Compl. for Civil Penalties and Permanent Injunctive Relief at ¶¶ 25-30, *United States v. Michael Stores, Inc. and Michael Stores Procurement Co., Inc.*, 3:15-cv-01203-G (N.D. Tex.), ECF No. 1) | 04/21/2015 |

Pursuant to D.R.I. LR Cv. 7, Plaintiffs respectfully submit this reply memorandum in further support of Plaintiffs' Motions to Strike Objections and Compel Supplemental Discovery Responses from Sony Electronics, Inc. (the "Motions to Compel").

## ARGUMENT

I.   **THRESHOLD ISSUES**

   A.   **Persons With Knowledge**

In Plaintiffs' memorandum, Plaintiffs argued that there must be additional persons with knowledge of Plaintiffs' allegations and Sony Electronics' defenses within Sony Electronics and from Sony Group entities and others, and that Wanda Interrogatories No. 1 and 2, if answered, would result in their identification.

In its opposition, Sony Electronics argues that it already responded fully to Plaintiffs' interrogatories, and specifically that:

> Until 2014, SEL was the distributor of VAIO notebook computers in the United States. There is no basis for, or logic to, plaintiffs' speculation that SEL must have consulted with some other unidentified person … [and] SEL's response identified thirty-five individuals, and also incorporated by reference those identified by other parties in their responses and in depositions.  This was a complete response.

(SEL Mem. at 11-12).

In reply, Sony Electronics was not merely a distributor of VAIO notebook computers; it was and is also the VAIO trademark owner, importer, marketer, seller, and repairer and servicer. These facts were clearly presented and supported in Plaintiffs' memorandum (*see, e.g.,* Pls.' Mem. at 1).  Sony Electronics does not dispute that it acts in these capacities.  When these undisputed facts are considered, it is clearly not speculation by Plaintiffs that other persons with knowledge must exist.  These roles come with obligations that require Sony Electronics to be able to identify persons with knowledge of these things from within itself and from the supply chain other than the Director of Corporate Product Safety (the "Director"), whose knowledge, as

a matter of corporate policy, is meticulously limited.  It is clear that Plaintiffs, and the Court, are faced with a party that consciously refuses to comply with the most basic of its discovery obligations—identifying persons with knowledge.[1]

B.    **Written Answers to Interrogatories**

In Plaintiffs' memorandum, Plaintiffs argued that Sony Electronics improperly relied on Fed. R. Civ. P. 33(d), citing *Pascale v. G.D. Searle & Co.,* 90 F.R.D. 50 (D.R.I. 1981), a factually analogous case, for the proposition that a party relying on Rule 33(d) must first establish that there is some burden involved above and beyond the simple task of referring to records to answer, which Sony Electronics failed to do.

In its opposition, Sony Electronics argues that it provided a direct response to each interrogatory and only referred to the "UL reports and related documents" in addition and in essence gratuitously, citing Wilson Interrogatory No. 1 as an example (SEL Mem. at 13).  In the alternative, Sony Electronics argues that Plaintiffs are "incorrect in asserting that SEL could not refer to the UL Report" because "Plaintiffs offer nothing beyond their own say-so to support that contention" and further refer the Court to *Corvello v. New Engl. Gas Co.,* 2008 WL 311123 (D.R.I. Feb. 1, 2008) for the proposition that once Defendant utilized Rule 33(d), the burden fell to Plaintiffs to show that the burden of deriving or ascertaining the answers is not substantially the same for both parties, which Plaintiffs failed to establish (SEL Mem. at 13-14).

In reply, if there is any portion of Sony Electronics answer to an interrogatory that is to be drawn from the "UL Report and related material" then Sony Electronics should provide that

---

[1]    Sony Electronics argues that it produced organizational charts as requested and that Plaintiffs are incorrect to assert otherwise (SEL Mem. at 12).  In fact, Plaintiffs *requested* the organizational charts for Sony Electronics from 2005 to the present (Pls. Mem. at Ex. 14) but only *received* the present-day Service Engineering Department chart, which is the Director's department.  This production, which mirrors the answers to Wanda Interrogatories No. 1 and 2, is incomplete, and has the effect of preventing discovery of persons with knowledge.

portion of the answer in writing instead of referring Plaintiffs to lengthy and technical documents without Bates citation or explanation.

As for the alternative argument, Sony Electronics entirely ignores *Pascale*. *Pascale* requires that a party establish that there is a "burden" within the meaning of Rule 33(d) before the option may be invoked—this framework clearly puts the initial burden on the party seeking to rely on Rule 33(d). *Corvello,* cited by Sony Electronics, is completely consistent with *Pascale* because the party relying on Rule 33(d) in *Corvello* first established that there was a "burden" within the meaning of Rule 33(d). Specifically, the party relying on Rule 33(d) in *Corvello* explained to the Court that the interrogatories related to a business that ceased operations decades ago and there were no living employees who had familiarity with the business' records that dated back to the 1880s (all of which were produced). Based on this showing, the Court observed: "This appears to be one of those rare cases when the producing party is as unfamiliar (or nearly so) with business records as is the requesting party." 2008 WL 311123, at *1. In contrast, here, Sony Electronics does not even attempt to first establish why there is a "burden" within the meaning of Rule 33(d). Rather, Sony Electronics skips that step, assumes that it has established that such a "burden" exists, and challenges Plaintiffs to respond why the burden of deriving the answers is not substantially the same for both parties. This is plainly wrong and inconsistent with the Court's directions in both *Pascale* and *Corvello.*

### C.     Verifications Under Oath and In the Proper Form

In Plaintiffs' memorandum, Plaintiffs argued that Sony Electronics interrogatories must be made under oath and in the proper form for a corporate agent (specifically, that it should not contain the qualifier "to the best of my [the Director's] knowledge, information, and belief").

3

In its opposition, Sony Electronics asserts that Plaintiffs seek relief that they could have obtained with a phone call and that Sony Electronics will provide verifications that are notarized or otherwise under oath (SEL Mem. at 14). Sony Electronics' opposition, however, is silent on the issue of the proper form of verification for a corporate representative (*id.*).

In reply, Plaintiffs did place a phone call and left a message with Sony Electronics on September 15, 2015 requesting that these two items be fixed; that call was never acknowledged. For the oath, Plaintiffs welcome Sony Electronics offer to provide verifications that are notarized or otherwise under oath. For the form of the verification, it is unclear whether Sony Electronics will remove the qualifier. To date, nothing has been received. Unless and until these issues are resolved, Plaintiffs request the Court compel Sony Electronics to provide proper verifications.

## II.   RELEVANCY ISSUES

In Plaintiffs' memorandum, Plaintiffs argued that they seek relevant information and documents, specifically responded to objections made by Sony Electronics to certain interrogatories, and argued that Sony Electronics' failure to specify any others objections resulted in waiver. Sony Electronics' points in opposition (which focus on Sony Electronics' objections made to certain interrogatories) are addressed below.

### A.   Wanda Ovalles Document Request No. 5

At issue here is whether Plaintiffs are entitled to documents relating to the four (4) incidents in Europe and Asia where VPC-EB model laptops caught fire. Sony Electronics identified these four (4) incidents in response to Wanda Interrogatory No. 13. During a meet and confer held on Nov. 4, 2015, Plaintiffs attempted to clarify that "field failure data" is meant to include any documentation in Sony Electronics' possession or control relating to these incidents.

Plaintiffs seek to discover how Sony Electronics knows about four (4) incidents in Europe and Asia, what happened, whether there was any investigation, and if so the results.

In its opposition, Sony Electronics points out that it provided Plaintiffs the location, model number, battery back, and to the extent known, the battery cell manufacturer for the four (4) incidents, and that Sony Electronics does not have any "field failure data" to produce (SEL Mem. at 14-15).[2]

In reply, documents must exist.  Sony Electronics appears to be relying on its own unique definition of "field failure data" (without stating what that definition may be) to justify withholding responsive documents.  *See Ayers v. Continental Cas. Co.,* 240 F.R.D. 216, 220-21 (N.D. W. Va. 2007) ("Gamesmanship to evade answering as required is not allowed").

### B.   Wilson Ovalles Interrogatory No. 25

In its opposition, Sony Electronics asserts that Plaintiffs' request for "all battery cell failures and protection circuit failures" is improper because: (1) Plaintiffs have not identified a mode of failure or defect that caused the failure; (2) Plaintiffs have not and cannot establish that all 17,000 model VAIOs between 2000 and 2014 are substantially similar; and (3) to comply with Plaintiffs request would be unduly burdensome (SEL Mem. at 15-25).  Sony Electronics posits that the proper scope for incidents of battery cell failures and protection circuit failures is VPC-EA, EB, and EC models, for one year beginning spring 2010 and ending 2011, which is the period when VPC-EA, EB, and EC models were distributed (SEL Mem. at 23-24).

---

[2]   Plaintiffs cannot help but note that Sony Electronics has submitted declarations and argued in its opposition that it does not have possession, custody, or control of incidents anywhere except the United States and Canada (*see, e.g.,* Posse Decl. ¶ 3; SEL Mem. at 33-34).  How is it, then, that Sony Electronics is able to disclose to Plaintiffs incidents that have occurred in Europe and Asia?

1.      **Sony Electronics Has Known Of The Defect For Almost Four Years**

It is entirely disingenuous for Sony Electronics to feign ignorance or otherwise assert that Plaintiffs have not identified the problem.  Sony Electronics has been on notice as of February 2012 that the VAIO laptop "ignited" (Pls.' Mem. at **Ex. 1**).  Plaintiffs' complaint in March 2014 clearly alleged that the VAIO "erupted in flames" (Pls.' Compl. (ECF No. 1) at ¶ 1).  Plaintiffs' interrogatories served in June and July 2014 asked Sony Electronics about VAIOs "burst[ing] into flames" and "thermal runaway" (Pls.' Mot. to Compel).  Plaintiffs served Sony Electronics with Rule 30(b)(6) notice of deposition; seven (7) of the nine (9) topics relating to "explosions" (Pls.' Mem. at **Ex. 12**).  Plaintiffs deposed the Director in April 2015 about "explosions" and "thermal runaway" (Pls.' Mem. at 10-12).  For the sake of clarity, if there is any doubt whatsoever, Plaintiffs allege that the VAIO at issue in this case exploded, and this means the lithium ion cells in the battery experienced thermal runaway.

2.      **The Scope Requested By Plaintiffs Is Substantially Similar**

Sony Electronics would try to convince the Court that the scope of Plaintiffs' requests is unwieldy and unprecedented.  To eliminate the confusion manufactured by the Sony Electronics' opposition, Plaintiffs offer a description of the essential characteristics of the product at issue. Plaintiffs believe these basic facts to be undisputed.

The VAIO at issue is a laptop.  It therefore has contained within it a battery that stores sufficient energy to allow the laptop to run when it is not plugged in.  Sony Electronics' opposition is not clear, but Plaintiffs believe that all VAIOs use ***lithium ion*** batteries.

Lithium-ion batteries were developed for commercial use in 1991.  All subsequent generations share a number of characteristics.

A **battery** describes a collection of connected lithium ion **cells** providing a single source of electrical energy.  The cells in a battery may be organized, for example, like sardines in a can.

A lithium ion **cell** is a sandwich-like structure.  On one side is the negative electrode (anode) and on the other the positive electrode (cathode).  The cathode and the anode hold the lithium ions (Li+).  During discharge, the ions move in one direction and then reverse direction during charging.   It is this transfer of ions that creates voltage, or electricity.  Between the anode and the cathode is a solvent (electrolyte) that provides the media for lithium ion transport.  In the middle of the electrolyte is a porous film (separator) that permits ions to move back and forth but prevents an electrical short.  Thus the "sandwich" is cathode / electrolyte / separator / electrolyte / anode.  In order to achieve a density of energy, a cell is made by packing together as many sandwiches as possible.  The evolution of the lithium ion cell is the effort to pack more and more energy into a single cell.

An electrical short in a lithium cell can cause the electrolyte to heat and become a gas.  The increase in pressure leads to an explosion in the cell, propagation of heat and fire to adjacent cells in a battery pack, and dispersal of material heated up to 2,000 degrees (*see* SEL 30(b)(6) Dep. Tr. at 57:12-62:20) (**Ex. 30**)).

There are a number of additional failures that, when they occur, are sufficient to cause a lithium ion battery cell to short and explode.  These failures are common to ***all lithium ion cells***.  One such common failure mechanism was described by the Director.  At his deposition Mr. Posse admitted that an explosion from a battery containing lithium ion cells can result from a manufacturing defect, specifically, the deposit of particles on the separator (*see id.* at 81:01-82:22 (**Ex. 30**)).  There are multiple other failure modes common to all lithium ion cells that have been recognized by the industry (*see* C. Hendricks, N. Williard, S. Mathew, M. Pecht, A

failure modes, mechanisms, and effects analysis (FMMEA) of lithium-ion batteries, J. Power

Sources 297 (2015) 13-120 (**Ex. 31**), Table 1).[3]

For purposes of a discovery analysis, therefore, the common features of all lithium ion

cells and the existence of multiple common failure modes that can result in the kind of explosion

experienced here render all VAIOs that use lithium ion cells substantially similar.

### 3.    Plaintiffs Do Not Seek To Impose An Undue Burden

Regarding burden, Plaintiffs do not believe that Sony Electronics protests relate to

identifying incidents of exploding cells.  Plaintiffs posit, instead, that incidents of explosions,

that at one time cost Sony to incur substantial loss and present a serious product safety issue

(Pls.' Mem. **Ex. 29**), is the type of thing to have near one's fingertips.  Instead, Plaintiffs' review

of Sony Electronics' opposition suggests that the issue of burden is caused by Plaintiffs request

for incidents of VAIOs overheating (*see, e.g.,* Merkel Decl. ¶ 5).  Plaintiffs note that the

information on VAIO model designations set forth in Sony Electronics' opposition is new

information not shared prior to Plaintiffs' Motions to Compel.  Plaintiffs propose that the Court

permit the parties to continue to meet and confer regarding the scope of overheating incidents.

### C.    Wilson Ovalles Interrogatory No. 4

For malfunctions and complaints, Plaintiffs request relates specifically to malfunctions

and complaints relating to the VAIO VPC-EB32FM/WI notebook computer and that are of a

nature that increases the risk of overheating or explosion.

In its opposition, Sony Electronics' position in effect is that Plaintiffs must specify the

*precise* malfunctions and complaints before discovery is allowed (SEL Mem. at 25-26).

Plaintiffs are willing to limit the scope as appropriate but refuse to have to guess correctly.  Thus

---

[3]     Note that the industry sometimes uses the word "battery" to refer to a *cell*, and in that instance use the phrase "battery pack" to refer to the *battery*.  It is an unfortunate source of confusion.

far, Sony Electronics has specified:  a frozen screen, a hard drive crash, a broken hinge, and (during the meet and confer) a button popping off a keyboard.  With the exception of the broken hinge, because Plaintiffs are unsure what Sony Electronics means by that, the others are not the type of malfunctions or complaints Plaintiffs seek because they are not of a nature that increases the risk of overheating or explosion.  The issue is squarely before the Court as to whether Plaintiffs are entitled to malfunctions and complaints relating to the VPC-EB32FM/WI and that are of a nature that increase the risk of overheating or explosion, or whether Plaintiffs must specify the precise malfunction or complaint in order to obtain anything at all.

### D.      Wanda Ovalles Interrogatory No. 18

Plaintiffs seek to the requested financial information to discover the reasonableness and motivations behind Sony Electronics' business decisions concerning VAIOs.

## III.      KEY ISSUE OF CONTROL

The primary and critical issue for the Court is the issue of Sony Electronics' control of the information and documents requested by Plaintiffs.[4]  What is at issue here is no less than whether Sony Electronics' attempt to evade its discovery obligations under the Federal Rules of Civil Procedure will succeed.

### A.      Sony Electronics Mischaracterizes Plaintiffs' Argument on Control

In its opposition, Sony Electronics urges the Court to apply the strict "legal right" test and asserts that Plaintiffs have provided no reason to do otherwise (SEL Mem. at 29).  In the alternative, Sony Electronics argues that Plaintiffs have not established control because Sony

---

[4]      Sony Electronics repeatedly misstates the issue as being whether Sony Electronics has control of information or documents "concerning heat events, malfunctions, and complaints" (*see* SEL Mem. at 3, 4, and 27-30, 33).  To be clear, the issue is whether Sony Electronics has control of ***the information and documents that Plaintiffs requested,*** which is not limited to heat events, malfunctions, and complaints, but also includes basic information such as the factory and when the cells, battery, and laptop were made.  Sony Electronics' misstatements obscure the fact that basic information is denied on the basis of Sony Electronics' claim that it does not have control.

Electronics is not the alter-ego of Sony Corporation or others, and because Sony Electronics did not act as an agent for Sony Corporation or others (SEL Mem. at 30-33).

First, Plaintiffs' approach is consistent with that adopted by other federal district courts in the First Circuit, the purpose of which is to guard against sharp practices, inequitable conduct, or other false and misleading actions whereby corporations try to hide documents or make discovery of them difficult (Pls.' Mem. at 17).

Second, Plaintiffs have not alleged an alter-ego or agency theory to establish control. That is not required.  As *Camden Iron* makes clear, the list of ways to establish control cited by Sony Electronics (SEL Mem. at 30) are "alternate grounds" to establish control.  *See Camden Iron v. Marubeni America Corp.,* 138 F.R.D. 438, 441 (D.N.J. 1991).  Therefore, it is irrelevant that Sony Electronics is the subsidiary of Sony Corporation, or that there are other entities in between.  What is relevant is that Sony Electronics (the VAIO trademark owner, importer, marketer, *etc*.) must have access to the information and documents that Plaintiffs requested to run its business.  Sony Electronics' focus on facts and arguments not an issue serves only to highlight that it has nothing to say about the critical facts and arguments presented by Plaintiffs.

### B.      Sony Electronics Does Not Comply With Federal Law

As an importer/manufacturer under the CPSA, Sony Electronics is required to access the information and documents requested by Plaintiffs to comply with its reporting obligations under Section 15 and 37 of the CPSA.

Incredibly, in Sony Electronics' sworn statements, the Director claims to not be aware of any business or legal requirement to seek safety related information from "any parent corporation of SEL" and reiterates that "[he] ha[s] no legal right or practical ability to demand or obtain information from Sony Corporation in Japan" (Posse Decl. ¶ 5).  Sony Electronics also

10

asserts that Sony Corporation merely grants access to only a limited set of databases necessary for the sale, marketing, and service of Sony products (Schmaler Decl. ¶ 6).

Sony Electronics' position is inconceivable.

To take the example of Sony Electronics' reporting requirements under 15 U.S.C. § 2064(b), Sony Electronics approach as an importer of products from Asia into the United States is **not to ask** about product safety from its affiliates and partners in Asia that design and manufacture the products, and so **not obtain** any information, and in this way comply with 15 U.S.C. § 2064(b).  This approach by an importer is precisely the opposite of the plain text and expressed intent of Congress.  *See* 15 U.S.C. §§ 2051, 2052(a)(11).  The Consumer Product Safety Commission ("CPSC"), which administers the CPSA, also does not agree.  *See* 16 C.F.R. §§ 1009.3(b), 1115.6, 1115.11, 1115.12, 1115.13.  If a report is required, Sony Electronics is incapable of submitted information required by law.  *Cf.* CPSC Compl. for Civil Penalties and Permanent Injunctive Relief at ¶¶ 25-30, *United States v. Michael Stores, Inc. and Michael Stores Procurement Co., Inc.*, 3:15-cv-01203-G (N.D. Tex.), ECF No. 1) (**Ex. 32**).  In all events, a responsible importer, aware of the potential dangers associated with lithium ion cells, would not have a corporate policy not to ask and therefore not obtain information about incidents of explosions.[5]

**C.     Plaintiffs Have Established That A Nexus Should Exist**

When Plaintiffs' argument on control and the facts presented by Plaintiffs are faced squarely, it is clear that there must be a nexus between the information and documents sought by Plaintiffs and the information and documents to which Sony Electronics should have ordinary business access given the nature of its business.

---

[5]     Sony Electronics' extraterritorial argument (SEL Mem. at 34) is a red-herring that does not excuse Sony Electronics' disregard for federal law.  Plaintiffs do not contend that the CPSA has extraterritorial effect.  The effect of the CPSA is here in the United States on importers such as Sony Electronics.

## **CONCLUSION**

For the foregoing reasons, nothing in Sony Electronics' opposition changes Plaintiffs

request that their Motions to Compel be granted in their entirety.

Dated:  December 3, 2015

Respectfully submitted,

PLAINTIFF WANDA OVALLES, INDIVIDUALLY AND
P.P.A ADRIAN OVALLES, AND WILSON OVALLES

By: /s/ Miriam Weizenbaum

DELUCA & WEIZENBAUM, LTD.
Amato A. DeLuca
Miriam Weizenbaum
199 N. Main Street
Providence, RI 02905
Telephone:  (401) 453-1500
Facsimile:  (401) 453-1501
bud@delucaandweizenbaum.com
miriam@delucaandweizenbaum.com

*Attorneys for Plaintiff Wilson Ovalles*

SHIPMAN & GOODWIN LLP
James. W. Bergenn (*pro hac vice*)
Mark K. Ostrowski (*pro hac vice*)
William J. Ronalter (*pro hac vice*)
One Constitution Plaza
Hartford, CT 06103-1919
Telephone: (860) 251-5000
Facsimile:  (860) 251-5218
jbergen@goodwin.com
mostrowski@goodwin.com
wronalter@goodwin.com

*Attorneys for Plaintiff Wanda Ovalles, on behalf of
herself and her son, Adrian Ovalles*

## <u>CERTIFICATE OF SERVICE</u>

      I hereby certify that on December 3, 2015, the foregoing memorandum of law was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's CM/ECF system.


           <u>/s/ Miriam Weizenbaum</u>