# EXHIBIT B

```
                IN THE UNITED STATES DISTRICT COURT
                   FOR THE DISTRICT OF RHODE ISLAND


    * * * * * * * * * * * * * * *    C.A. NO. 14-137M
                                 *
   WANDA OVALLES, Individually   *
   and as P.P.A., et al          *
                                 *
       VS.                       *   JUNE 9, 2016
                                 *   10:00 A.M.
   SONY ELECTRONICS, INC., et al *
                                 *
   * * * * * * * * * * * * * * * *   PROVIDENCE, RI


             BEFORE THE HONORABLE JOHN J. McCONNELL, JR.,
                             DISTRICT JUDGE

                           (Motion to Compel)

                            **R E D A C T E D**

   APPEARANCES:

   FOR THE PLAINTIFFS:     AMATO A. DeLUCA, ESQ.
                           MIRIAM WEIZENBAUM, ESQ.
                           DeLuca & Weizenbaum, Ltd.
                           199 North Main Street
                           Providence, RI   02903

                           JAMES W. BERGENN, ESQ.
                           CHRISTOPHER J. CAHILL, ESQ.
                           Shipman & Goodwin, LLP
                           One Constitution Plaza
                           Hartford, CT   06103


   FOR THE DEFENDANTS:     JOHN F. KELLEHER, ESQ.
                           LaSalle & Kelleher, P.C.
                           One Turks Head Place
                           Providence, RI   02903

                           DAVID M. ROGERS, ESQ.
                           Campbell, Campbell, Edwards &
                           Conroy
                           One Constitution Center, 3rd Floor
                           Boston, MA 02129

   Court Reporter:         Karen M. Wischnowsky, RPR-RMR-CRR
```

1  the Court is inclined with respect to scope, the scope
2  issue, may help inform the possession, custody or
3  control argument.
4  　　　　The Defendants have narrowed the area in every
5  one of their pleadings as to where they don't have
6  possession, custody or control and can't break the seal
7  on the box in Japan; and that is malfunctions,
8  complaints and heat incidents. So we take this to mean
9  the prior incidents of cell failures.
10 　　　　So, you know, their position is we don't have
11 that, and particularly what they've -- can put that
12 together with the -- their argument in their briefs
13 that, you know, Look, we're Sony Electronics. We sell
14 in U.S. and Canada. We've got U.S. and Canada data.
15 We just don't have data from Europe or Asia. We don't
16 have that. That's Sony Japan. We don't have it.
17 　　　　I mean, in fact, they've given us four
18 incidents, many of which are not in the United States.
19 So it's sort of puzzling as to what that means.
20 　　　　But in any case, with respect to possession,
21 custody or control, where Sony Electronics has landed
22 is, We don't have possession, custody or control of
23 malfunctions, complaints, heat incidents.
24 　　　　What we would ask the Court is to hold off on
25 deciding that broader issue of the relationship between

1  Sony Electronics and Sony Japan for this reason.  We
2  would ask the Court to recognize the proper scope of
3  discovery in this case, that is, those
4  Sony-manufactured 18650 lithium-ion cylindrical cells
5  back to 2005, give the Plaintiffs the opportunity to
6  receive from the Defendants the information they do
7  have about the recalls, about the design, the other UL
8  reports, whatever they have, and then return to the
9  question of possession, custody or control because that
10 production from Sony Electronics will give us view into
11 what information Sony Electronics had to have to
12 respond to the recall.
13          And this gets into, your Honor, the --
14          THE COURT:  Because you're assuming it will show
15 you that that includes Sony Japan.
16          MS. WEIZENBAUM:  I think so.  And if it doesn't,
17 then so be it; but I think it will give all of us view
18 into much more information about the true relationship.
19          And that's not a heavy lift for SEL, Sony
20 Electronics.  They've complained about the burden of
21 production and all of that.  We know they've already
22 responded to the Consumer Products Safety Commission
23 and provided information.
24          And the reason we know that is because we did a
25 Freedom of Information Act request to CPSC asking for

1   specifically ask for the documents withheld under
2   exemptions 3, 4 and 5?
3           MS. WEIZENBAUM:  Yes.  You mean to CPSC?
4           THE COURT:  Correct.
5           MS. WEIZENBAUM:  Yes.  We appealed this
6   decision.
7           THE COURT:  No, no.  Did you subsequently within
8   this litigation ask Sony to produce that which CPC
9   would not produce pursuant to those three exemptions?
10          MS. WEIZENBAUM:  I believe, yeah.  So that is
11  particularized in the second set of requests; but in
12  fairness, it is contained within the scope of Wilson
13  25.
14          THE COURT:  Right.
15          MS. WEIZENBAUM:  But it is particularized in the
16  second request, again, in this effort to particularize
17  so that we can get what we need.
18          The other area, your Honor, that I haven't
19  covered or there's some particular documents that the
20  Plaintiffs are seeking in their document requests, I
21  made reference to the incidents that Sony did -- Sony
22  Electronics did disclose to the Plaintiffs of heat
23  events in other countries, and the Plaintiffs are
24  seeking the underlying documentation concerning that
25  and haven't received it or if what SEL has produced is

1     all there is, haven't been told that.
2            Another item the Plaintiffs are seeking -- and
3     this I think, again, speaks to just the maddening
4     nature of this discovery process.
5            The Plaintiffs -- when we propounded this
6     discovery two years ago, we had a meet-and-confer with
7     the Defendants and then decided to commence a
8     deposition of a person with knowledge of a whole bunch
9     of topics and thought, you know, we're going to come at
10    it from two ways and try to get this information while
11    we do these meet-and-confers.
12           And I would note virtually all the information
13    that was promised to us in those meet-and-confers was
14    never provided.  I mean, it just was absolutely pulling
15    teeth, you know.
16           And I don't want to get in the weeds on this;
17    but, you know, We'll give you new deposition dates.  We
18    never get deposition dates.  It's just been maddening.
19           But one example, and it's specific in our
20    request that's before the Court today, in the -- that
21    30(b)(6), we did a document request and we asked for
22    all organizational charts because one interrogatory we
23    had propounded was who has knowledge of the allegations
24    and defenses.
25           And, again, all Sony identifies is this single

1    runaway hadn't been worked out.  The technical term for
2    what we now in the case referred to as thermal runaway
3    is joule heating, J-O-U-L-E.  Thermal runaway at that
4    point was an undefined term.  The objection was
5    properly interposed when it was made, and it should
6    stand.
7         Our response to that interrogatory which asked
8    how we designed and manufactured the laptop was that we
9    did not design and manufacture the laptop.  That is a
10   direct answer to the question that was posed.
11        We did go on and say there are UL reports which
12   show design and testing, and in response to the
13   conference that we had -- well, it was a prior
14   agreement that we had with Miriam and the conference
15   that we had in your chambers, we've identified further
16   other documents which would be -- which would show
17   something relevant to the question.
18        But we can't be faulted for that.  We're doing
19   what we can to provide the Court with the information
20   that we have because, as I already indicated, we did
21   not design, we did not manufacture this computer.  We
22   don't have those documents, the primary first-level
23   documents.
24        THE COURT:  You did design and manufacture,
25   however, the battery, the cells.

1         MR. KELLEHER: No. No, Judge. That was also
2 done in Japan. In our supplement, we identified the UL
3 reports which have some design information, testing
4 information in it. We identified PowerPoints and CPSC
5 documents.
6         The PowerPoints show the evolution. Essentially
7 what happened, Judge, in this case is that beginning in
8 2005 through the end of 2008, Sony implemented many
9 changes, which we'll get to in more detail in a minute,
10 regarding the design of their cells and the
11 manufacturing process of their cells to work on the
12 issue of thermal runaway.
13         One thing that's important to identify at the
14 outset, Judge, is that we've never obtained any
15 documents from anybody in Japan. All the documents
16 that we produced to date have come from U.S. Sony
17 Electronics employees.
18         THE COURT: Why are some of them in Japanese,
19 then?
20         MR. KELLEHER: That's just the way it is, Judge.
21 Some of them are in Japanese. The document referred to
22 by Ms. Weizenbaum which is marked SEL 3733, which I can
23 pass up to the Court, is bilingual. Would you like to
24 take a look?
25         THE COURT: No. I accept your representation.

1    your discovery so far now if you're now suggesting that
2    it would be expanding the scope of your response so far
3    to include all G6G cells?
4         MR. KELLEHER: I'm not suggesting that you do
5    that, Judge.
6         THE COURT: No, but what subset of all the G6G
7    cell information have you limited it to to date?
8         MR. KELLEHER: To date, the only thing we
9    produced, Judge, and again it's 700,000 laptops with
10   4.2 million cells, would be the EB model laptops. So
11   it's G6Gs and the EB.
12        And it was the EA, EB, EC were substantially
13   similar, I think, based on our prior filings; but,
14   again, as I said, we've gotten past the laptop issue.
15   We're down to the cells.
16        So in terms of scope, there's nothing before the
17   Court which would justify any sort of extension of the
18   scope of discovery past the relevant, then-current
19   design of the cell.
20        Control is an issue which I thought based on
21   what I read from the summary submission by the
22   Plaintiffs, I don't think that was on the table. There
23   were some --
24        THE COURT: It's still on the table. I think
25   they're just suggesting that perhaps we defer it to see

1  what's produced depending on what the Court's ruling is
2  on scope.
3          MR. KELLEHER:  Okay.  So --
4          THE COURT:  That was my understanding.
5          MR. KELLEHER:  Yes.  Would you like me to
6  address the issue?
7          THE COURT:  You know, any time people agree to
8  take things off my plate and limit it, I usually am
9  right there with agreement.  So absent your objection
10 to that proposition by the Plaintiff, it sounds --
11         MR. KELLEHER:  That's fine.  Just one small
12 point on the issue, though, Judge.  I think
13 Ms. Weizenbaum indicated that we've drawn a line in
14 terms of what we say we can't get and it's really just,
15 you know, the accident data.
16         That's not true at all, and you've seen the
17 declaration of Ms. Schmaler.  We can't get design
18 drawings.  We can't get -- we can get some design
19 information to the extent that it was relevant as to
20 service because we perform service on these things; but
21 we can't get the general design drawings, we can't get
22 manufacturing information, we can't get financial
23 information.  There's a universe of things that we
24 cannot get from --
25         THE COURT:  I mean, again, we don't have to go

1   into it now, but the part that caught my eye was the
2   *Textron* case that you referenced out of the First
3   Circuit, the *U.S. v. Textron* case where they talk about
4   the legal right or ability; and then you kept dropping
5   the word "ability" when you argued it and just stuck to
6   the legal right.
7         I suppose the question ultimately, if I ever
8   have to reach it, I'm not sure there's enough that's
9   before the Court on what Sony Electronics' ability is
10  to obtain it.
11        I know you've argued legal right, and I
12  understand that proposition; but I don't know that
13  there's enough before the Court on its ability to --
14  other than I think electronically in one fashion you
15  weren't able to obtain it.
16        MR. KELLEHER:  Well, Judge, and I promise I
17  won't dwell on it, but we have a lot of information in
18  our original papers on the ability as well.
19        The other point would be the underlying
20  authority relied upon by *Textron* only dealt with legal
21  right, not ability.
22        I think there was some discussion about certain
23  responsive documents, Judge.  The request -- there was
24  some reference that we selectively produced things in
25  the context of UL reports.  We have not done so.  We