UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

-----------------------------------------------------------------x
                                          :
WANDA OVALLES, INDIVIDUALLY               :
AND P.P.A A.O., AND WILSON OVALLES,       :
                                          :
                          Plaintiffs,     :        Case No. 3:14-CV-137-M-PAS
                                          :
          - against -                     :
                                          :
SONY ELECTRONICS, INC., BEST BUY CO., INC., :
FOXCONN INTERNATIONAL, INC., AND JOHN     :
DOE CORPORATIONS 1-4,                     :
                                          :
                          Defendants.     :
                                          :
-----------------------------------------------------------------x

## DEFENDANT, SONY ELECTRONICS INC.'S RESPONSE

## IN OPPOSITION TO PLAINTIFFS MOTION TO HALT PRODUCTION

### PRELIMINARY STATEMENT

After serving more than 100 burdensome and expansive document requests on SEL, moving this Court to compel the production of documents responsive to those requests, and obtaining an Order from the Court requiring SEL to produce documents responsive to those requests by January 27, 2017, Plaintiffs filed a self-styled "Motion to Halt Production" of the very same documents that were the subject of Plaintiffs' prior motions to compel.  And Plaintiffs filed this "Motion to Halt" on the same day that SEL was required by Order of this Court to **complete** its document production.  This Motion contradicts Plaintiffs' arguments to the Court in their serial motions to compel, violates the Court's Orders to SEL, and lays bare the extent to which Plaintiffs have abused, and continue to abuse, the discovery process in this action.

In their Motion, Plaintiffs argue that SEL is somehow at fault for producing responsive documents that SEL uncovered as part of its comprehensive collection, search, and review of electronically stored information ("ESI").  But Plaintiffs, and the Court, have known for many months that SEL was undertaking expansive and expensive ESI discovery to comply with the Court's Order granting Plaintiffs' motions to compel.  SEL's efforts regarding electronic discovery have been explained in correspondence among the parties, in multiple court filings, and in-person by SEL's counsel at the December 16, 2016 scheduling conference with the Court.  Indeed, at that December 16 conference, SEL detailed the electronic searches it was in the midst of conducting and explained that in connection with the issuance of any Scheduling Order, it would need until the end of January 2017 to complete its ESI production.  After that conference, on December 19, the Court entered a Scheduling Order requiring SEL to complete document production by January 27, 2017 and setting the close of fact discovery for March 3, 2017.

Plaintiffs' Motion omits **all** of these facts and instead persists in the strange fiction that SEL is at fault for producing the very documents that Plaintiffs sought in their motions to compel and that were required by Court Order to be produced by January 27.[1]  Plaintiffs' ever-shifting and inconsistent positions are nothing short of bizarre.  Notwithstanding Plaintiffs' Motion to Halt, and to ensure that it complied with the Court's December 19 Scheduling Order, SEL completed its production of documents (including ESI) on January 27.[2]

---

[1] Indeed, Plaintiffs seem to rely on a comment made by the Court on September 13, 2016 – months before the parties discussed the progress of SEL's ESI discovery at the Scheduling Conference on December 16 and before the Court issued its December 19 Order directing SEL to produce all documents by no later than January 27, 2017.

[2] The timing of Plaintiffs' Motion emphasizes its absurdity.  Plaintiffs filed this Motion on January 27 – the last day for any party to produce documents, absent an extraordinary showing of cause.  And while Plaintiffs purported to seek an Order "halting" SEL's production of documents, Plaintiffs nowhere indicated that this was an emergency motion or that the Motion warranted some expedited treatment such that it might be decided on January 27.  In fact,

This ESI production was not "terabytes" of data or "mountains of e-discovery," as Plaintiffs

assert.  Rather, SEL used its previously-disclosed electronic search terms and more than 60

contract lawyer document reviewers to, at great expense, pare 7.2 terabytes of data down to a

production of 18,775 documents, comprised of 99,407 pages.  Plaintiffs' Motion is therefore not

only stunningly counter-factual, it is also moot and should be denied as such accordingly.

## STATEMENT OF FACTS

As the Court is aware, Plaintiffs propounded over 100 separately-numbered

document requests on SEL in this action – including wide-reaching and burdensome requests

about computer models, battery packs, and lithium-ion cells other than those contained in the

VAIO computer the Plaintiffs purchased in 2010.  In SEL's initial responses to Plaintiffs'

requests, SEL objected to producing such documents on the grounds that Plaintiffs had failed to

show that any of these models were "substantially similar" to the VAIO model Plaintiffs had

purchased such that the broad discovery sought by Plaintiffs might be warranted.  Plaintiffs then

filed serial motions to compel the production of such documents; the parties submitted more than

900 pages of briefing and exhibits to the Court in connection with those motions;[3] and the Court

ultimately ruled in favor of Plaintiffs – requiring SEL to produce documents about not only the

VPC-EB VAIO notebook computer, BPS-22 battery pack and Sony-manufactured G6G lithium-

ion cells, but about all Sony-manufactured 18650 lithium-ion battery cells from 2005 to the

---

Plaintiffs knew that their Motion would not be briefed or decided until, at earliest, many days
later, after the January 27 deadline for production had passed and when that nothing would be
left for the Court to "halt."  In other words, Plaintiffs knew at the moment they filed this Motion
that the relief they sought would be moot.

[3] See ECF Docket Nos. 40-42; ECF Docket No. 47; ECF Docket No. 48; ECF Docket No. 55;
ECF Docket No. 64; ECF Docket No. 71; ECF Docket No. 72; ECF Docket No. 76; ECF Docket
No. 79.

present (and the battery packs and notebook computers containing those cells), including recalls of those cells.[4]

SEL immediately advised Plaintiffs that in order to comply with the Court's Order, and the newly expanded scope of discovery, it would need to undertake burdensome and time-consuming ESI discovery.[5]  SEL explained to Plaintiffs, and to the Court, that it would have to search and review (__not produce__) terabytes of data in order to locate responsive documents.[6]  Consistent with the Sedona Principles, ample case law, and common practice in the era of electronic discovery, SEL asked plaintiffs to cooperate in the selection of custodians and crafting of electronic search terms.[7]  SEL produced hundreds of pages of organizational charts to Plaintiffs to provide transparency regarding potential custodians.  And it invited Plaintiffs to participate in the crafting of electronic search terms (which are based on the very discovery requests that Plaintiffs themselves had drafted).  Rather than cooperate, as the law requires (and

---

[4] See ECF Docket No. 82 at 1-2 (June 29 Order).

[5] See ECF Docket No. 102-1, ¶¶ 3, 7 & Attachment Nos. 1, 3 (Declaration of David M. Rogers In Support of Sony Electronic Inc.'s Opposition to the Plaintiffs' Motion for Sanction, dated September 9, 2016 ("D. Rogers Decl.")).

[6] Id. ¶ 7 & Attachment 4 at 4 ("SEL will be processing approximately 3-4 terabytes of information collected from the custodial files of the 29 custodians . . .  SEL is also in the process of engaging dozes of contract review attorneys to conduct a responsiveness and privilege review of these several hundred thousand documents.").  Contrary to Plaintiffs' contention, SEL never represented (to Plaintiffs or otherwise) that it intended to produce terabytes of data – rather, SEL represented only that it would **review** that data and would produce responsive, non-privileged documents.  And that is exactly what SEL did.

[7] See, e.g., L-3 Commnc'ns Corp. v. Sparton Corp., 313 F.R.D. 661, 667 (M.D. Fla. 2015) ("Crafting appropriate search terms requires 'careful thought, quality control, testing, and cooperation with opposing counsel.'"); ACI Worldwide Corp. v. MasterCard Techs. LLC, 2015 WL 4249760, at **2-3 (D. Md. 2015) (discussing that electronic discovery requires cooperation among counsel); Saliga v. Chemtura Corp., 2013 WL 6182227, at *1 (D. Conn. 2013) (same); William A. Gross Constr. Assocs. Inc. v. American Mfrs. Mut Ins. Co., 256 F.R.D. 134, 135 (S.D.N.Y. 2009) ("[T]he best solution in the entire area of electronic discovery is cooperation among counsel . . . .").

as common sense dictates), Plaintiffs refused to work with SEL to develop a plan for ESI discovery and instead moved for sanctions.[8]

Notably – and despite that Plaintiffs now claim that they do not need the documents they previously sought to compel – Plaintiffs never asked this Court to reverse or stay its Order requiring SEL to produce documents about the other models, packs, cells and recalls. Accordingly, in order to comply with the Order, SEL moved forward with its ESI discovery plan, a fact that SEL made abundantly clear in its motion papers and in conferences with the Court.[9]

Knowing that SEL's substantial efforts to collect, search, review, and produce ESI were underway, Plaintiffs filed a Motion for Entry of a Scheduling Order with the Court on November 17, 2016, requesting, *inter alia*, that all fact discovery be completed by March 3, 2017, that dispositive motions be filed on August 7, 2017, and that trial commence on October 2, 2017.[10]  SEL filed a Limited Opposition to that motion, requesting, *inter alia*, that fact discovery close on March 17, 2017 and that expert discovery close on October 13, 2017.[11]  At the December 16, 2016 conference with the Court on that motion, counsel for SEL explained that SEL was nearing completion of the ESI discovery it believed was necessary for compliance with

---

[8] See ECF Docket No. 102-1, ¶¶ 6-9 (D. Rogers Decl.) (describing Plaintiffs' refusal to cooperate in process of crafting ESI protocol).

[9] See, e.g., ECF Docket No. 102 (dated September 30, 2016), at 27 ("As set forth above, SEL was instructed to hold off on these electronic searches until plaintiffs[] gave their feedback on September 6, but in light of plaintiffs' steadfast (and improper) refusal to cooperate, SEL has now commenced these electronic searches."); ECF Docket No. 108 (dated October 28, 2016), at 1 ("SEL . . . is in the process of searching approximately 4 terabytes of data from over 30 current and former SEL document custodians to locate responsive documents, and is currently engaging more than 50 contract lawyers to review electronic documents in an effort to respond to plaintiffs' numerous and broad document requests and interrogatories and move discovery forward.").

[10] ECF Docket No. 109.

[11] ECF Docket No. 110.

the Court's Order on Plaintiffs' motions to compel, that SEL would be able to complete production of ESI discovery by the end of January 2017, and that the cost to date of **just** the outside contract review attorneys engaged in connection with the ESI discovery was approximately $630,000.

After that conference, the Court issued an Order on December 19, 2016, *inter alia* instructing that "[a]ll written fact discovery will be responded to and all requested documents will be produced by January 27, 2017," setting a fact discovery cut-off of March 3, 2017, and setting a trial date of September 6, 2017.[12]

In accordance with that December 19 Order, SEL has now completed its production of documents, including those captured in its ESI search and review process.  That ESI effort included SEL's collection of 7.2 terabytes of data – which included more than 21 million emails, attachments, and non-email electronic files – and the application of SEL's previously-disclosed search terms to that data.  Those search terms yielded more than 500,000 documents, which were then reviewed by a contract lawyer review team comprised of 52 English-language reviewers, 14 Japanese-language reviewers,[13] and 2 project managers.  That team spent nearly 14,900 hours reviewing these documents at a cost of more than $840,000 (which is exclusive of the time and internal costs that SEL spent collecting and processing the data).

As a result of these high costs (both temporal and financial), Plaintiffs did **not** receive a massive, burdensome data dump, as they claim in their Motion to Halt Production.

---

[12] ECF Docket No. 111.

[13] Because some of its document custodians are fluent in Japanese, SEL also ran the ESI searches in Japanese so as not to miss any potentially-responsive documents in the Japanese language.

Rather, SEL's comprehensive and thorough review resulted in the discrete production of 18,775 documents comprised of 99,407 pages.[14]

Notably, Plaintiffs themselves **failed** to comply with the Court's Scheduling Order.  They informed SEL of additional document production in the early hours of January 28, 2017 – the day **after** the deadline for the production of such documents and **after** they filed their Motion to Halt.  Strikingly, their additional document production, which Plaintiffs did not send to SEL until January 30 and which SEL did not receive until **January 31**, includes more than **20,000** pages of new documents, exponentially increasing their document production from 1,628 pages (produced as of January 27) to 22,248 pages (produced as of January 31).

## <u>ARGUMENT</u>

### I.  PLAINTIFFS' MOTION SHOULD BE DENIED AS MOOT BECAUSE SEL COMPLIED WITH THIS COURT'S ORDER AND COMPLETED ITS DOCUMENT PRODUCTION ON JANUARY 27, 2017

Plaintiffs filed their Motion to Halt Production on January 27, 2017 – the same day that SEL was required to complete its document production.  Plaintiffs did not seek a temporary restraining order or any other type of emergency relief.  Because SEL was under an existing Court Order to produce its responsive documents by January 27, 2017, it moved forward with and completed that production on that date as it was required to do.  Plaintiffs' Motion to Halt, accordingly, should be denied as moot.

It is well-settled that a motion should be denied as moot where the "relief sought can no longer be given or is no longer needed."  <u>Taylor v. Woods</u>, 2006 WL 760600, at *1

---

[14] SEL made ESI productions to Plaintiffs on January 20, 2017 (comprised of 6,715 documents), on January 26, 2017 (comprised of 6,079 documents), and on January 27, 2017 (comprised of 5,981 documents).  Plaintiffs did not file their "Motion to Halt" until January 27.

(D.R.I. Feb. 16, 2006) (citation omitted); <u>Horizon Bank & Trust Co. v. Massachusetts</u>, 391 F.3d

48, 55 (1st Cir. 2004) (a court should "not decide abstract questions of law divorced from real

factual controversies").  This includes discovery motions mooted by the parties' actions or the

passage of time.  <u>See, e.g.</u>, <u>Davis v. Jacob S. Cibrowski Family Trust</u>, 2012 WL 3779152, at *2

(D.N.H. Aug. 31, 2012) (motion for a protective order concerning certain interrogatories denied,

as moot); <u>Butler v. Sigma-Aldrich, Inc.</u>, 2005 WL 6246596, at *2 (D. Mass. Nov. 8, 2005)

(motion for protective order concerning deposition denied, as moot).  Here, because SEL has

already produced the documents as required by this Court's Orders, Plaintiffs' request to halt

such production should be denied as moot.

   Mootness aside, however, Plaintiffs' Motion to Halt is troubling in several ways

that SEL feels compelled to address.

   *First*, it is nothing short of stunning that after:  (1) serving more than 100

document requests; (2) filing two motions to compel the production of documents responsive to

those requests; (3) burdening the Court with hundreds of pages of briefing and exhibits arguing

that broad discovery concerning VAIO notebook models, battery pack models, and lithium-ion

cells other than the type owned by Plaintiffs was necessary to the prosecution of their case; and

(4) forcing SEL to spend hundreds of thousands of dollars searching for and producing a broad

range of documents to comply with the discovery – Plaintiffs now asked to "halt" production of

those very documents.  If Plaintiffs had concluded that the documents they requested, and

engaged in motion practice to obtain, were indeed unnecessary, then they could have and **should**

have asked the Court to rescind its Orders requiring their production, rather than forcing SEL to waste hundreds of thousands of dollars on unnecessary and unneeded discovery.[15]

Second, Plaintiffs claim that SEL still has not produced "key information" that "is available without performing massive electronic searches," that was supposedly "particularized in plaintiffs' Motion for Sanctions" and that, Plaintiffs claim, is necessary to determine whether "further searches will advance discovery." (Pls.' Br. at 5). Notably, however (and consistent with Plaintiffs' repeated practice of raising discovery issues via motion to the Court rather than by meet-and-confer), the instant Motion is the first time that Plaintiffs have raised this claim to SEL. Indeed, Plaintiffs never contacted SEL concerning any issue with the non-ESI documents SEL has produced since they filed their Motion for Sanctions. And tellingly, Plaintiffs' Motion to Halt fails to identify a **single**, particularized document or piece of information that is available that they have not received. If Plaintiffs have concerns or questions, we urge them to share them with SEL immediately.

Finally, Plaintiffs misrepresent to the Court that SEL will produce "terabytes" of documents (Pls.' Br. at 1), "bury its opponent in production" (id. at 6), produce "mountains of e-discovery" (id. at 7) and "overwhelm plaintiffs with overbroad and potentially pointless production of its documents" (id.) in a manner to "benefit SEL and prejudice the plaintiffs." (Id.)

---

[15] For example, the Sedona Principles admonish parties to "consider sequencing or phasing e-discovery," see "Defining The Scope Of E-Discovery," https://thesedonaconference.org/node/4310, a process in which SEL would have eagerly participated in order to achieve more targeted discovery. However, Plaintiffs repeatedly refused to meet-and-confer regarding an ESI protocol and, instead, have moved to compel, moved for sanctions, and, now, moved to "halt." Had Plaintiffs genuinely sought to halt SEL's ESI efforts, then the appropriate step was to request that the Court vacate the Order on their motions to compel.

These statements are both factually wrong and incredibly frustrating.[16]  As set forth above, SEL

has not dumped terabytes of data on Plaintiffs, nor did it threaten to do so.  Rather, SEL engaged

in a time-consuming and costly review – with the assistance of more than 50 document reviewers

over the course of more than four months – to reduce a universe of millions of documents from

over a ten-year time frame to only those non-privileged documents responsive to plaintiffs'

broad and burdensome document requests.  In total, SEL produced only 18,775 documents

comprised of 99,407 pages as its ESI discovery.  For Plaintiffs to now tell SEL and the Court, in

essence, "oh, never mind" on the day that document production was Ordered to be complete

imposes a demonstrable and measurable prejudice on SEL, not on Plaintiffs.

---

[16] Plaintiffs cite a single case, In re Seroquel Products Liability Litigation, which is wholly
inapposite.  In that case, the defendant drug manufacturer produced more than ten million pages
of ESI (that is, 100 times more than was produced by SEL) from 80 custodians and numerous
databases.  Unlike here, the Seroquel defendant refused to disclose to the plaintiffs the protocol it
used to search for and collect responsive ESI and its ESI production was rife with technical
issues that rendered it unusable.  See 244 F.R.D. at 657-58, 659, 661, 664.  These facts led the
Seroquel Court to conclude that the defendant there was being "purposely sluggish" in making
its production in order to unfairly limit the plaintiffs' time to review that information.  Id. at 664.
By contrast, here, SEL has repeatedly sought to include plaintiffs in the development of the ESI
protocol (Plaintiffs have refused), engaged in a substantial and costly effort to eliminate non-
responsive material from its production, and has produced ESI documents in the format
requested by Plaintiffs on the timetable mandated by this Court.

## <u>CONCLUSION</u>

For the reasons set forth above, SEL respectfully submits that Plaintiffs' Motion to Halt Production should be denied as moot.

Dated:    February 1, 2017

DEFENDANT,
SONY ELECTRONICS INC.,
by


/s/ *John F. Kelleher*
John F. Kelleher
LASALLE & KELLEHER, P.C.
One Turks Head Place, Suite 450
Providence, RI 02903
(401) 421-8080

James M. Campbell
David M. Rogers
CAMPBELL CAMPBELL EDWARDS &
CONROY
One Constitution Center, 3rd Floor
Boston, MA 02129
(617) 241-3000

Robert J. Hafner
ECKERT SEAMANS CHERMIN & MELLOTT,
LLC
Two Liberty Place, 22nd Floor
50 S. 16th Street
Philadelphia, PA 19102
(215) 851-8457

*Attorneys for Defendant Sony Electronics Inc.*

## CERTIFICATION

I hereby certify that on this 1st day of February, 2017, a true copy of the within document was served electronically through the ECF system to:

William J. Ronalter, Esq.
James W. Bergenn, Esq.
Mark K. Ostrowski, Esq.
Christopher J. Cahill, Esq.
Shipman & Goodwin, LLP
One Constitution Plaza
Hartford, CT 06103
*Counsel for Wanda Ovalles and Adrian Ovalles*

Amato A. DeLuca, Esq.
Miriam Weizenbaum, Esq.
DeLuca & Weizenbaum, Ltd,
199 North Main Street
Providence, RI 02903
*Counsel for Wilson, Wanda & Adrian Ovalles*

Thomas C. Angelone, Esquire
Sean K. Brousseau, Esquire
Hodosh Spinella & Angleone, P.C.
One Turks Head Place, Suite 810
Providence RI 02903
*Counsel for Foxconn, International, Inc.*

Robert J. Hafner, Esquire
Eckert Seamans Cherin & Mellott, LLC
Two Liberty Place, 22nd Floor
50 S. 16th Street
Philadelphia, PA 19102
*Counsel for Sony Electronics Inc. & Best Buy Co., Inc.*

James M. Campbell, Esq.
David M. Rogers, Esq.
John A. K. Grunert, Esq.
Campbell, Campbell, Edwards & Conroy, P.C.
One Constitution Plaza
Boston, MA 02129
*Counsel for Sony Electronics Inc. & Best Buy Co., Inc.*

*/s/ John F. Kelleher*