**UNITED STATES DISTRICT COURT**
**DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| WANDA OVALLES, INDIVIDUALLY AND P.P.A. A.O., AND WILSON OVALLES, | : | Case No. 3:14-CV-137-M-PAS |
| | : | |
| Plaintiff, | : | |
| | : | |
| -v- | : | |
| | : | |
| SONY ELECTRONICS, INC., BEST BUY CO., INC., FOXCONN INTERNATIONAL, INC., AND JOHN DOE CORPORATIONS 1-4, | : | |
| | : | |
| Defendant. | : | |
| | : | |

**PLAINTIFFS' OPPOSITION TO DEFENDANT**
**SONY ELECTRONICS, INC.'S MOTION FOR RECONSIDERATION**

A motion for reconsideration is an extraordinary remedy and should only be granted after a movant has met the high burden of showing that the Court misapprehended some material fact or point of law when issuing its original order. Sony Electronics, Inc. ("SEL") has not met this burden. Instead, SEL has simply repackaged its old arguments in an attempt to avoid the consequences of its own abusive behavior throughout the course of discovery in this case. For this reason, SEL's motion for reconsideration ("Motion To Reconsider" (ECF 130)) should be denied.

## **TABLE OF CONTENTS**

RELEVANT PROCEDURAL HISTORY ..................................................................1

SEL'S MOTION TO RECONSIDER ..................................................................7

ARGUMENT ..................................................................8

I.     Applicable Legal Standard..................................................................8

II.    SEL's Motion Fails To Meet The Standard For Reconsideration ................................8

    A.     The Court Did Not Misapprehend Any Material Fact or Point of Law When It Issued It's February 10, 2017 Order Halting SEL's Production of ESI ................9

        1.     Contrary to SEL's Claim, The Court's Sept. 29, 2016 and Dec. 19, 2016 Orders Did Not Require SEL to Make Its ESI Production................................9

        2.     SEL's Did Not Produce All Responsive Material on 8/29/2016......................11

        3.     SEL's Post-Sanction Production Does Not Excuse Or Cure Its Failures..........12

        4.     SEL's ESI Production Is Non-Responsive And Unnecessary..........................15

    B.     The Court Did Not Misapprehend Any Material Fact or Point of Law When It Issued It's February 21, 2017 Order Quashing the UL Subpoena......................18

        1.     SEL Ignores The Procedural And Factual History...........................................18

        2.     SEL's Tortured Construction Of The December 19, 2016 Order Should   Be Rejected ..............................................................18

        3.     The SEL-UL Contract Provides SEL With Control ..........................................19

III.   Plaintiffs' Modus Operandi........................................................................20

CONCLUSION..................................................................21

## RELEVANT PROCEDURAL HISTORY

Plaintiffs have made an effort to set forth (below) a procedural history that is both precise and comprehensive in order to illustrate the extensive time and many opportunities available to SEL to comply with discovery.  Plaintiffs note that none of the information delineated herein is new to the Court or to defendant SEL, a fact relevant to the standard the Court must apply to the defendant's Motion To Reconsider.

On January 30, 2014, SEL sent a letter to plaintiffs stating in relevant part:

Sony Electronics, Inc. has determined that it is the entity responsible for marketing and distribution of this unit in the United States and would be the proper defendant in any lawsuit arising from an alleged problem with this notebook computer

(ECF 42-2).

On February 26, 2014, SEL sent a letter to plaintiffs stating in relevant part:

[P]lease be advised that the notebook computer (excluding the battery pack) was manufactured by a non-Sony entity, Foxconn International, Inc.

(ECF 42-3).[1]

On June 17 and July 7, 2014, plaintiffs served SEL with requests to answer interrogatories and produce documents (*see* ECF 42-4 (certificates of service)).

SEL requested (and received as a matter of courtesy) time to respond (*see* ECF 42-5; ECF 42-8)).  In the responses finally received in February 2015, however, for the vast majority, SEL simply objected in a generic manner and implied without saying directly

---

[1]     Foxconn International, Inc. appeared and denied that it manufactured the laptop (*see, e.g.,* Foxconn Answer (ECF 28) at ¶ 2; Foxconn Rule 16 Statement (ECF 29) at p. 1; Foxconn Responses to Wilson Ovalles Interrogatories Nos. 3-25 (ECF 42-18)).

that it did not have possession or control of the information and documents requested. Through leveraging plaintiffs' courtesies, SEL manufactured a seven month delay.[2]

Further, in the responses finally received in February 2015, SEL repeatedly referred plaintiffs to "UL Report and related material" for the laptop, battery pack, and cells in lieu of answering the questions (*see* Wanda Ovalles Interrogatories No. 4 and 14 (*see* ECF 41); Wilson Ovalles Interrogatories No. 1, 6, 9, 10, 11, 20, 22 and 23 (*see* ECF 39)).  At this point in time, SEL had produced only incomplete versions of the UL report for the laptop and battery pack (SEL 478-735 and 736-755 respectively), and no UL report for the cells.

Plaintiffs in fact met and conferred repeatedly in 2015 to try to obtain clear and final answers and full and complete production of documents.  During that process, in particular on April 23, 2015, SEL's corporate designee testified under oath that SEL does not have possession or control of information or documents about prior Sony cell problems or about purported design and manufacturing modifications (*see* Pls. Obj. (ECF 56-1) at p. 3 (citing deposition testimony)).  And on June 26, 2015, during a telephonic meet and confer where the parties discuss each and every one of plaintiffs' requests, SEL's counsel further orally represented that SEL had provided all responsive material in its possession or control, but SEL simply would not set forth these representations in writing under oath in its discovery responses (*see* Pls. Mot. to Compel (ECF 42) at pp. 5-6, 15-16).

On October 15, 2015, after careful study and an additional two week period of delay at SEL's request (during which time nothing relating to discovery occurred), plaintiffs moved to compel (*see* Pls. Mot. to Compel (ECF 39, 41, and 43)).

---

[2]     *Compare LG Display Co. Ltd. v. Chi Mei Opt. Corp.*, No. 08-cv-2408, 2009 WL 223585 at *1-2 (S.D. Cal. Jan. 28, 2009) ("The Court begins by noting that Sony Electronics has created prejudice on Plaintiff by delaying the filing of their objections.  In reliance on Sony Electronics' numerous representations to Plaintiff [that third party Sony Electronics was investigating responsive information for production], Plaintiff repeatedly extended the date for the filing of objections.").

Plaintiffs met and conferred with SEL for a full day in person on November 4, 2015 regarding the motions, going through each and every request again.  The discussions that occurred are memorialized in a letter plaintiffs sent to SEL on November 19, 2015 (*see* ECF 59-1).  SEL promised to follow-up on the various items, but never did.

As of February 25, 2016, SEL had produced a total of thirty-two (32) documents.  Oral argument on plaintiffs' motions to compel was then scheduled for March 16, 2016.

Starting on February 26, 2016 and continuing through May 19, 2016, among other things, SEL incredibly claimed it did not know this case was about lithium ion cells or thermal runaway (*see* SEL Mot. for Leave to Surreply (ECF 54) at p. 2) and produced an additional five hundred eight-six (586) documents largely unconnected to any of the extant requests (*see* Pls. 5/6/2016 Ltr. to SEL (ECF 63-3)).  (Later SEL linked many of these documents to requests to which they were not responsive (*see id.*)).

Even after this surprise production by SEL, Plaintiffs still only had incomplete versions of the UL reports for the Ovalles' laptop, pack, and cells.

It is also worth noting during this time that on April 20, 2016, the parties again met and conferred for a full day in person, walking through plaintiffs' discovery requests.  Those discussions are memorialized in a letter plaintiffs sent to SEL on May 6, 2016 (*see* ECF 63-3).  SEL again promised to follow-up on the various items, but again never did.

On June 29, 2016, the Court granted plaintiffs' motions to compel ("Court's 6/29/2016 Order" (ECF 82)), struck SEL's objections and responses and ordered new responses consistent with SEL's obligations under the Federal Rules of Civil Procedure.

The discovery deadline at that point was June 30, 2016.

Between June 29, 2016 and August 2, 2016, plaintiffs again met and conferred with SEL as set forth in the affidavit of plaintiffs' counsel (*see* ECF 106-2 at ¶¶ 2-21).  For SEL to comply with the Court's June 29 order, plaintiffs proposed that SEL first provide written responses to plaintiffs' requests and produce documents that did not require search terms to locate before embarking on any massive e-discovery search.  SEL  ignored and never responded to plaintiffs' proposal in this regard.  Instead, SEL reported to the Court that plaintiffs refused to cooperate (*see* ECF 106-2 at ¶¶ 17, 20).

On August 9, 2016, after conferring with the parties, the Court entered a text order which stated:

> Defendants' supplemental responses to discovery shall be provided by 8/29/16; Plaintiff's shall inform defendants as to the scope of e-discovery by 9/6/16.  The discovery deadline is vacated.

On August 29, 2016, SEL served written responses and produced two-hundred thirty-five (235) additional documents (*see* ECF 106-2 at ¶ 24).  A huge portion of these documents were linked to only two requests (*see* ECF 106-2 at ¶ 24 and Attachment 16A; Pls. Mot. For Sanctions (ECF 94-1) at pp. 17-18 and n.7).  The effect was to give the appearance of complying with discovery obligations without actually complying.

On September 8, 2016, plaintiffs informed SEL in writing and by telephone that SEL's 8/29 supplementation was seriously deficient (*see* ECF 106-2 at ¶ 26).

On September 13, 2016, the Court held a hearing on the record, where plaintiffs set forth their complaints with SEL's failure to answer interrogatories and produce documents that did not require search terms to locate.  At the hearing, the following back-and-forth occurred between SEL and the Court:

> MR. ROGERS [SEL]:  …  So getting back to, you know, where we are, I think the best thing to do would be to refer -- to have your Honor refer the E-discovery portion of it to the magistrate judge because that's what the rules contemplate, you know, in the cases that interpret them. It contemplates cooperation or at least a

4

> meeting of the parties to try to figure out, you know, what can be done, and this has been out there for some time.
>
> THE COURT: But, again, I'll repeat myself. I agree that's how it should be done; but if there's fundamental or underlying information that the Plaintiff believes they need before they can substantively participate in that, then we need to hear them out and see what that is.  I think just all of a sudden now picking the magistrate judge, who I don't think has touched this case yet, and have her trying to get in the midst of it in the course of figuring out E-discovery, unless both parties think so, doesn't seem to make sense to me yet until we figure out some of the underlying discovery -- non-E-discovery issues.

(9/13 Tr. at 29:10-30:06).

On September 16, 2016, plaintiffs moved for sanctions ("Motion For Sanctions" (ECF 94)).  The Motion For Sanctions delineates interrogatories and specific documents which SEL was capable of responding to and providing without E-discovery, but which remained unanswered and un-provided.

On September 30, 2016, in its opposition to plaintiffs' Motion For Sanctions, SEL informed plaintiffs and the Court that it had unilaterally decided to commence its e-discovery proposal (*see* SEL Opp. Mot. for Sanctions (ECF 102) at p. 27).

Simultaneously, on September 30, and continuing thereafter, on October 28, November 7, and November 23, 2016, SEL produced approximately 15,000 pages (1,382 documents) that SEL claimed to just locate (*see* ECF 117-1).

On December 19, 2016, after conferring with the parties, the Court entered a scheduling order which stated in relevant part:

> 1.  All written fact discovery will be responded to and all requested documents will be produced by January 27, 2017.  No document or response produced after that date will be admitted, absent an extraordinary showing of cause by the offering party.
>
> 2.  Fact discovery shall otherwise close on March 3, 2017.

("Court's 12/19/2016 Order" (ECF 111)).

5

On January 20, 26, and 27, 2017, SEL produced 99,406 pages (18,775 documents) resulting from its unilateral decision to implement its e-discovery proposal (ECF 117-3). Plaintiffs immediately moved to halt the imposition of the ESI production (plaintiffs' "Motion To Halt") (ECF 113)).

On February 3, 2017, SEL subpoenaed Underwriters Laboratories ("UL"), seeking UL standards, UL testing, documents concerning CPSC recalls, and the like (ECF 116-2). Plaintiffs immediately moved to limit and quash the UL subpoena (plaintiffs' "Motion To Limit Discovery" (ECF 116)).

On February 10, 2017, the Court, after full briefing, granted plaintiffs' Motion to Halt, which halted the imposition on plaintiffs' of SEL's e-discovery production (the "Court's 2/10/2017 Order" (ECF 118)).

On February 21, 2017, the Court, after full briefing, granted plaintiffs' Motion To Limit Discovery, which quashed SEL's subpoena to UL as untimely (the "Court's 2/21/2017 Order" (ECF 123)).

On March 3, 2017, SEL moved for reconsideration of the Court's 2/10/2017 Order and the Court's 2/21/2017 Order ("SEL's Motion To Reconsider" (ECF 130)).

## SEL'S MOTION TO RECONSIDER

SEL's Motion To Reconsider contains five principle arguments:

Court's 2/10/2017 Order halting SEL's e-discovery

(1) The Court's 06/29/2016 and 12/19/2016 orders required SEL to produce all responsive documents (SEL Mem. (ECF 130-1) at pp. 1-2);

(2) SEL produced all responsive non-electronic documents that it located without keyword search terms (*id.* at p. 2); and

(3) SEL did not produce huge volumes of unnecessary and non-responsive e-discovery and instead produced documents SEL determined were directly responsive to plaintiffs' requests (*id.* at p. 3);

Court's 2/21/2017 Order quashing SEL's UL subpoena

(4) The Court's 12/19/2016 Order permitted fact discovery of third parties through March 3, 2017 (*id.* at p. 4).

(5) The UL-SEL contract only provides UL rights to obtain information from SEL; it does not provide SEL with any rights to control or compel UL to disclose that information (*id.* at p. 3); and

SEL concludes it arguments for reconsideration of the Court's 2/10/2017 Order and the Court's 2/21/2017 Order with a claim that plaintiffs' *modus operandi* is to refuse to participate in discovery in good faith, misrepresent to the Court the substance of the documents SEL has produced, and to demand severe sanctions that will avoid a review of the merits of plaintiffs' claims (*id.* at p. 4).

Plaintiffs will address each argument in turn.

## ARGUMENT

SEL's Motion To Reconsider should be denied because it simply repackages old arguments in an attempt to avoid the consequences of its own abusive behavior throughout the course of discovery in this case.

## I.    Applicable Legal Standard

The standard for reconsideration of an interlocutory order is undisputed and is set forth as follows:

> A motion to reconsider is an extraordinary remedy and should be used sparingly unless the court has misapprehended some material fact or point of law. *Lincoln Nat. Life Ins. Co. v. Wilmington Trust Co.,* C.A. No. 08–74 S, 2013 WL 4042659, at *3 (D.R.I. Aug. 9, 2013) (quoting *Palmer v. Champion Mortg.,* 465 F.3d 24, 30 (1st Cir.2006)). The extraordinary nature of this remedy is apparent from the fact that the Federal Rules of Civil Procedure do not provide for a motion to reconsider; instead, a court's inherent power gives it the ability to re-examine its interlocutory orders. *Id.* To obtain relief, the movant must demonstrate either that newly discovered evidence (not previously available) has come to light or that the rendering court committed a manifest error of law. *Palmer,* 465 F.3d at 30.

*Luckerman v. Narragansett Indian Tribe*, 965 F. Supp. 2d 224, 232 (D.R.I. 2013).

## II.    SEL's Motion Fails To Meet The Standard For Reconsideration

None of SEL's arguments in its Motion To Reconsider, or the alleged facts asserted to support them, are based on new evidence or new law. Instead, the gravamen of SEL's position is that the Court credited plaintiffs' presentation of the facts and law in their submissions, and not SEL's competing presentation, and in so doing wrongly concluded that plaintiffs were correct and that SEL was incorrect. This argument does not meet the standard set forth in *Luckerman* and, therefore, SEL's motion should be denied.

**A.** **The Court Did Not Misapprehend Any Material Fact or Point of Law When It Issued It's February 10, 2017 Order Halting SEL's Production of ESI**

    **1.** **Contrary to SEL's Claim, The Court's Sept. 29, 2016 and Dec. 19, 2016 Orders Did Not Require SEL to Make Its ESI Production**

SEL appears to claim the Court on one hand mandated SEL's ESI production while later sanctioned SEL for doing precisely as it was told. To support this claim, SEL argues that the Court's December 19, 2016 Order required SEL to produce all responsive documents by January 27, 2017 or face the prospect of preclusion. Therefore, SEL claims, the Court was in error when it recalled, as stated in its February 10, 2017 order:

> The Court was explicit in its direction to the parties that attempting to engage in electronic discovery, even in engaging in a discussion of the scope of the discovery, would be futile, and in fact could be detrimental to the proper administration of this case.

In other words, per the Court's direction SEL was not allowed to engage in e-discovery after its August 29 supplementation, but it had to do so in order to comply with the Court's later December order. That's the argument in a nutshell.

SEL's "damned if it did and damned if it did not" artifice is based an inaccurate presentation of the procedural history and SEL's options.

At any time before and for a good while after the Court's 6/29/2016 Order, SEL had the option to comply with its discovery obligations. To avoid this fact, SEL ignores the very long procedural history in this case involving numerous instances of SEL's failure to comply with the Federal Rules, all of which is clearly documented in the record and summarized in the procedural history above, culminating in the Court's 6/29/2016 Order striking SEL's objections and responses and ordering new responses consistent the Federal Rules of Civil Procedure.

Further, as of August 8, 2016 the Court imposed a clear and unambiguous sequence to the discovery SEL owed to the plaintiffs.  The Court directed SEL to first complete the discovery supplementation due to the plaintiffs on August 29, 2016 and ***then*** begin defining the scope of e-discovery.  Quite logically, the Court likely recognized that all parties would be better able to address what electronic discovery was necessary once SEL provided proper and complete answers to interrogatories as well as the production of documents that did not require search terms to locate.  This is clear from the Court's instruction given to SEL at the September 13, 2016 hearing that:  "if there's fundamental or underlying information that the Plaintiff believes they need before they can substantively participate in that [e-discovery], then we need to hear them out and see what that is" (*see* 9/13/2016 Tr. at 29:19-30:06)).

In their Motion For Sanctions filed September 16, 2016, plaintiffs set forth the precise answers and productions SEL could have provided without electronic discovery on August 29, 2016 as ordered.  Yet, rather than allow the underlying discovery issues to be sorted out first by the Court, on September 30, SEL simultaneously began producing more non-ESI documents whilst announcing to plaintiffs and the Court that SEL had unilaterally decided to commence its e-discovery (*see* SEL Opp. (ECF 102) at p. 18).

Relatedly, SEL's inability over the course of several extensive submissions to provide the Court with any concrete evidence that it actually answered plaintiffs' interrogatories or produced documents that did not require search terms to locate as SEL was ordered to do by August 29, 2016 is crystal clear from the submissions.  SEL certainly had the opportunity to be heard multiple times on the question of whether SEL provided the precursor material necessary to enable plaintiffs' fair participation in e-discovery (*see*

10

SEL's Obj. to Motion For Sanctions (ECF 102); SEL's Surreply (ECF 108); SEL's Obj. to Motion To Halt (ECF 114); SEL's Obj. to Motion To Strike (ECF 126-1)).  SEL cannot reasonably claim otherwise.

The Court, in its 2/10/2017 Order, therefore was well informed when it indicated that plaintiffs' complaints have merit as follows:  "Plaintiffs have shown that Sony has not fully complied with its production obligations on non-electronic discovery matters…" (ECF 118).  Because plaintiffs' complaints have merit, that inherently raises serious concerns about SEL's ESI production, since proper responses on August 29 were a required precursor to considering the proper scope of e-discovery.

It is only by ignoring these facts that  SEL can maintain that the Court's 12/19/2016 Order mandated SEL's production of electronic discovery.  The argument is an artifice designed to deflect attention away from the decisions that SEL itself made over the course of two plus years, and a means to elide the fact that SEL had, at all times, the opportunity to explain and defend those decisions.  There is nothing new in this argument that merits the extraordinary relief of reconsideration.

**2.**      <u>**SEL's Did Not Produce All Responsive Material on 8/29/2016**</u>

In its motion, SEL states in bold:

> By August 29, 2016, consistent with the Court's Orders, SEL produced all responsive documents it had identified[3] without collecting emails and non-email electronic documents and using electronic keyword searches.

(SEL Mem. (ECF 130-1) at p. 6 (bold removed)).

---

[3]     Plaintiffs take particular issue with SEL's use of the concept that it produces what it can "locate" or "identify", while at the same time refusing to allow any inquiry into what searches have been conducted. SEL's tactic, if accepted as valid, would enable a party to delay producing or withhold entirely documents, as well as to obtain one-sided information held by affiliates and partners for use in the litigation, at its whims.

11

Plaintiffs disagree and have countered this claim with extensive facts and law set out in their Motion For Sanctions briefing (ECF 94, 106).  SEL had the opportunity to oppose (ECF 102) and surreply (ECF 108), and there will be oral argument.

### 3.    SEL's Post-Sanction Production Does Not Excuse Or Cure Its Failures

In its motion, SEL asserts that:

> SEL produced to Plaintiffs all responsive non-electronic documents that it located without keyword search terms.  SEL did not, as the Court's February 10 Order suggests, fail to comply with "its production obligation on non-electronic discovery matters, including basic information such as recall records, retention schedules, various contracts, etc."  Respectfully, this statement is in error and misapprehends the substance of the documents SEL had produced months earlier.  The Court's statement in the February 10 Order concerning the sufficiency of SEL's non-electronic discovery is apparently based on Plaintiffs' misrepresentation in their motion papers that SEL had not produced "basic information, including . . . recall records . . . retention schedules . . . [and] various contracts" that was necessary to "assist the plaintiffs in identifying meaningful and targeted [electronic] searches." Plaintiffs' allegation is demonstrably false.  In fact, SEL produced those very non-electronic documents. ...[4]  In other words, SEL produced the exact non-electronic documents that Plaintiffs misrepresented that SEL had not produced.  Plaintiffs concede this exact point in their reply brief on the Motion to Halt, acknowledging that the documents produced by SEL after their September 16, 2016 sanctions motion "revealed the ways in which Sony Electronics' ESI searches could have been narrowed if not wholly eliminated."

(SEL Mem. (ECF 130-1) at pp. 24-26).

SEL is clearly referencing here the fact that it produced approximately 15,000 pages (1,382 documents) in the *wake* of plaintiffs' Motion For Sanctions that SEL claimed that it happened to locate at that time; and mixing and blending what it produced on August 29 with what it produced in the wake of plaintiffs' Motion For Sanctions.  The claim is, in effect, SEL cured the problems raised in plaintiffs' Motion For Sanctions and did so in time for plaintiffs to participate in e-discovery.

SEL's ignores that its failure to reach what was available without ESI searches to answers interrogatories in frank violation of the August 29 deadline, as well as its

---

[4]    In the paragraph replaced by the ellipse here, SEL purports to describe the content of its 8/29 supplementation, along with the content of its post-sanction productions.

identification of scores of "persons with knowledge" without explanation on August 29, made proceeding with e-discovery impossible.

Special attention to the interrogatories is critical.

The interrogatories were served in June and July of 2014.  Plaintiffs should have received proper responses years ago and certainly by August 29, 2016.

Plaintiffs sought, for example, whatever audits were conducted by SEL (or others on its behalf) of the Sony line, the battery pack manufacturer, and the battery cell manufacturer (Wilson Ovalles Interrogatory No. 16).  If the answer is that neither SEL nor its agents *etc.* conducted audits of the laptop, pack, and cell factories, SEL had been obligated since July of 2014 to so state in its answer to the interrogatory, rather than deploy a tactic to avoid responding.[5]  Timely and forthcoming responses would have permitted properly targeted and narrowed ESI searches .  Instead, SEL responded as follows:

> **Wilson Interrogatory No. 16**:  Please identify each and every audit conducted by this defendant, its agents, servants or employees from 2000 to the present on the following Sony Notebook components:  (a) audit of the Sony line; (b) audit of the battery pack manufacturer; and (c) audit of the battery cell manufacturer.

> **SEL on 8/29**:  SEL objects to this interrogatory on the grounds that the use of the term "audit" is vague and ambiguous.  Notwithstanding the foregoing objection, SEL states that it is not aware of any such "audits" as it understands the term.

SEL's refusal to commit itself to answers—whether through SEL's use of generic objections or with its non-responsive commentary that "SEL did not design or manufacture" or with its over-reliance on Fed. R. Civ. P. 33(d)—was compounded by SEL's attempt on August 29 to suddenly identify scores of persons with knowledge in

---

[5]   Indeed, SEL's position for nearly two years which it would represent orally to plaintiffs and even implied if not stated outright in pleadings to the Court was that it was a mere distributor that does not do or know these sorts of things (*see, e.g.,* Pls. Mot. to Compel (ECF 42) at pp. 3-4; SEL Opp. to Mot. to Compel (ECF 47) at pp. 11-12)).  This was the reason given by SEL why nothing would be produced.  But SEL simply refused to commit itself to this position in writing under oath in its answers to the interrogatories.

response to Wanda Ovalles Interrogatory No. 2.  All of these issues with the interrogatory responses prevented a proper determination of the scope of any ESI search.

Second, in any event, while it is true that in the *wake* of plaintiffs' Motion for Sanctions, on September 30, October 28, November 7, and November 23, SEL produced approximately 15,000 pages that it claimed it just located, SEL neglects to state clearly that these post-sanction documents were produced at the same time (or after) SEL announced to plaintiffs and the Court that SEL had decided to commence its ESI searches, which occurred on September 30 (*see* ECF 102 at p. 27), thereby preventing the content of the post-sanction documents from having any limited effect on SEL's e-discovery proposal.

Finally, it bears reiterating that the content of the post-sanction documents did indeed reflect the ways that SEL failed with its ESI proposal to search the right custodians for responsive and relevant information regarding Sony-made cell failures, as well as how, even when the right custodians are identified, there remains suspect deficiencies in SEL's production (*see* Pls. Reply Mot. To Halt (ECF 117) at p. 2 ("To take one of lots of examples of things, these documents reveal that recalls and thermal runaway issues, including key communications about them, are funneled through attorneys at Sony Electronics, none of whom were searched"); Pls. Reply Mot. To Strike (ECF 129) at p. 5 ("plaintiffs discovered documents that contain key questions about Sony-made lithium ion cells posed by government agencies and others -- questions that mirror those posed by plaintiffs -- yet SEL's responses to these questions are not included")  SEL ignores this.

In sum, SEL did not cure the deficiencies that plaintiffs identified in their Motion for Sanctions with SEL's post-sanction productions; the Court's 2/10/2017 Order recognizes this fact and is well-supported in this regard.

### 4.   SEL's ESI Production Is Non-Responsive And Unnecessary

In its motion, SEL asserts:

> Based on Plaintiffs' false allegation that SEL had produced 'huge volumes of unnecessary and non-responsive documents', the Court's Order misapprehends the actual volume and substance of SEL's electronic document production, which consists of a limited set of documents narrowly tailored and responsive to Plaintiffs' document requests.

(SEL Mem. (ECF 130-1) at p. 27).

This is not a new argument (*compare* SEL Obj. to Motion To Halt (ECF 114) at pp. 9-10), and does not provide the Court with new facts nor present law not available to the Court at the time of the Order for which SEL seeks reconsideration.  Notwithstanding SEL's citations to unrelated actions,  SEL's production of 99,406 pages (18,775 documents), which includes 3,541 excels[6], is fairly described as "massive".

Regarding the substance, SEL offers conclusory statements such as "SEL's production of email and non-email electronic documents was the product of a careful and detailed process designed to identify and produce only responsive material" (SEL Mem. (ECF 130-1) at p. 28), "SEL searched the electronic documents of only the persons most likely to have documents responsive to Plaintiffs' requests" (*id.*), and the "searches were each crafted to correspond to Plaintiffs' document demands" (*id.*), *inter alia*.  SEL couples these conclusory statements with generic descriptions of documents from its ESI without any citation to any bates to enable plaintiffs to review and rebut the descriptions (*see* SEL counsel Decl. (ECF 130-2) at ¶ 5(a)-(g)).

SEL's conclusory and generic presentation is seriously undermined by the procedural history.  Consider a similar instance where SEL made conclusory and generic

---

[6]     An excel technically counts as one (1) document comprised of one (1) page, but the number one (1) does not convey just how large and dense any particular excel can be.

assurances regarding the substance of its productions, only to have those representations

dissemble upon scrutiny, in particular:

- The production of 2,000+ pages on the eve of oral argument for plaintiffs' Motions To Compel (ECF 39, 41, and 43) which upon review were not, and could not considered to be, responsive to plaintiffs' discovery requests, compounding the issues and causing delay (*see generally* Pls. May 20, 2016 Ltr. to SEL);

- In particular SEL's production of and repeated citation to SEL 2001-3723 (477 documents) in lieu of producing one (1) specific and discrete document that SEL had all along and used to assert in response to Wanda Interrogatory No. 13 that there were incidents involving VPC-EB models in Europe and Asia but none that involved Sony-made cells;

- Only for SEL to ***finally*** admit that it is withholding the document based on a claim of privilege even though it did not log the document to permit a review of this privilege claim (*see* SEL 108-2 at p. 9 ("The only document SEL has located containing any information regarding the three (3) incidents SEL understands occurred in Spain, Portugal and Japan is a privileged attorney-client communication").

This history, along with SEL's failures to properly answer interrogatories and

produce documents that did not require search terms to locate discussed above, provides a

legitimate basis to conclude that SEL's ESI production is simply more of the same:  an

attempt to bury plaintiffs with irrelevant and non-responsive material, to avoid producing

relevant and responsive material.

A review of SEL's E-discovery production, which plaintiffs necessarily undertook

in order to address these issues, reveals the inherent irrelevance designed into the search

protocols by SEL.  In particular, as SEL's own generic descriptions of the E-discovery

production confirm (*see* ECF 130-2 at ¶ 5(a)-(g)), SEL collected a huge volume of

documents from SEL personnel (including its so-called consumer product safety division)

that appear to have only ***post-sales customer servicing*** responsibilities, as well as a very

large amount of documents from SEL personnel with ***market research and promotional***

*support* responsibilities to help Sony Energy Devices Corporation sell lithium ion cells to other U.S.-based laptop brand sellers (many of which require translation).[7]

SEL did not include any person in its ESI searches with any responsibility for the design or testing and inspection of VAIOs before they are sold to customers in the United States, a fact evident from plaintiffs' initial review.  Communications from the period when VAIOs were being designed and manufactured and that relate to oversight of design and manufacture of VAIOs pre-sales between:

- SEL and Foxconn (laptop manufacturer),

- Sony Wuxi (battery pack manufacturer),

- Sony Energy Devices (battery cell manufacturer),

- Other vendors involved with VAIOs, or

- Sony Corporation

could not be found.  Had SEL acknowledged in response to the June/July 2014 discovery it assumes no responsibility beyond that of a distributor and post-sales servicing company, that has no knowledge or role regarding the design and manufacture of VAIOs or the packs and cells in VAIOs, E-discovery could have been *significantly* narrowed if not wholly eliminated.

In sum, yes, SEL's ESI production is a huge volume of unnecessary and non-responsive documents and plaintiffs fully stand by that representation.

*       *       *

For the foregoing reasons, SEL's Motion To Reconsider the Court's 2/10/2017 Order halting the imposition of ESI should be denied.

---

[7]     SEL also states that there are:  "At least 130 additional documents detailing the design and testing of lithium ion battery cells" (Kelleher Dec. (ECF 130-2) at ¶ 5(g)), but because no citation are provided plaintiffs cannot find and review what SEL is referring to here.

**B.      The Court Did Not Misapprehend Any Material Fact or Point of Law When It Issued It's February 21, 2017 Order Quashing the UL Subpoena**

The Court's February 21, 2017 Order quashing SEL's subpoena to UL was appropriate when entered and, as no new facts or law are provided to the Court, remains valid.

**1.      SEL Ignores The Procedural And Factual History**

Plaintiffs argued in their Motion To Limit Discovery that SEL had ample opportunity to obtain and produce information from UL, and that SEL has engaged in litigation with a clear purpose of circumventing its obligations under Rule 26(e) and engaging in exactly the trial by ambush that Rule 26(b)(2)(C) prohibits, which the Court appeared to credit in its February 21, 2017 Order by recounting that history.  SEL's Motion To Reconsider simply ignores all of that and Rule 26, which provides an independent basis for the Court's February 21, 2017 Order.

**2.      SEL's Tortured Construction Of The December 19, 2016 Order Should Be Rejected**

The Court made the obligations of the parties to this litigation clear:

1.  All written fact discovery will be responded to and all requested documents will be produced by January 27, 2017.  No document or response produced after that date will be admitted, absent an extraordinary showing of cause by the offering party.

2.  Fact discovery shall otherwise close on March 3, 2017.

("Court's 12/19/2016 Order" (ECF 111)).

SEL attempts to extract itself from this obligation with a claim that it was entitled to withhold discoverable and responsive material and produce it after the deadline if it was willing to live with the prospect of inadmissibility (*see* SEL Mem. (ECF 130-1) at p. 32 ("[the December 19 Order] states only that documents produced after that date may not be

18

admitted at trial.  This is not a ban on document productions by parties (or anyone else) or on taking discovery—it is only a warning as to admissibility at trial …").

The Court should reject this argument as a basis to reconsider of its February 21, 2017 Order.  This supplies the Court with no new, recently unearthed evidence, it presents no unappreciated law, and identifies no error by the Court.  Fundamentally, it is disingenuous and dangerous to the fair conduct of discovery.[8]

### 3.        The SEL-UL Contract Provides SEL With Control

Finally, SEL argues that the Court erred by holding that the SEL-UL contract establishes SEL's control of UL material because "each of the paragraphs cited by plaintiffs' concern UL's right to obtain information **from** SEL—not SEL's right to obtain information from UL" (SEL Mem. (ECF 130-1) at pp. 19; *see also id.* at p. 30).

Concisely put, the language of the SEL-UL contract expresses the parties' intentions.  Those provisions make clear that the information provided by SEL or others on SEL's behalf to UL belongs to SEL.  These provisions therefore permit the inference that SEL has the legal right to obtain the information that it (or someone on its behalf) provided to UL.

In *Ice Corp. v. Hamilton Sundstrand Corp.*, a case that is analogous on the facts and procedural posture, the defendants made an argument essentially identical to SEL's here.  It was rejected by the *Ice Corp.* court.

> Defendants further attempt to argue that they do not "control" the documents at issue by noting that the in a case from the District of Massachusetts regarding control, cited by plaintiff in the instant motion, defendants had the "right, upon reasonable notice, to examine *and copy* the information" sought by plaintiffs.  In turn, defendants argue that "the contract between Ratier [defendant] and Artus [defendant's vendor] does not give defendants control over Artus's documents or

---

[8]        Plaintiffs are particularly concerned that SEL will continue its efforts to introduce material through back doors and by ambush as the litigation proceeds towards expert discovery and trial.

the right to demand *copies* of those documents. In particular, the Master Terms Agreement ... between Artus and Ratier does not give Ratier the right to obtain detailed design documents from Artus." ***What defendants fail to comprehend***, and what a simple search of the case law in the District of Kansas regarding "control" in the context of Rule 34 would have revealed, ***is that an express agreement allowing for the "copying" of documents between a party and a third-party is not a prerequisite for the court to find that the party "controls" the said documents.*** … In the District of Kansas, "Courts have universally held that documents are deemed to be within the possession, custody or control if the party has actual possession, custody or control or has the legal right to obtain the documents on demand." ***Here, based on the unambiguous section of the MTA, defendants own the designs and thus, the court infers, have the legal right to obtain the documents on demand***. Moreover, while courts have cautioned that "[l]egal ownership is not determinative of whether a party has ... control of a document for the purposes of Rule 34" the court takes this to mean:  if the third-party has "legal ownership" of the document, the inquiry as to control does not end there. Conversely, if a party does have legal ownership, as here, the court finds a strong indication that defendants possess the very definition of "control" over these documents.

245 F. Supp. 513, 520-21 (D. Kansas 2007) (emphasis added).

The reasoning in *Ice Corp.* applies here.

In sum, the Court's 2/21/2017 Order holding that the SEL-UL contract establishes SEL's control of UL material is well-supported by facts and law.  Because SEL had control of UL materials, the deadline to produce them was August 29, 2016.  To state the obvious, the UL materials do not fall within scope of second-phase E-discovery.[9]

\*        \*        \*

For the foregoing reasons, SEL's Motion To Reconsider the Court's 2/21/2017 Order quashing the UL subpoena should be denied.

## III.   Plaintiffs' Modus Operandi

Last, in its motion, SEL argues:

Plaintiffs' *modus operandi* has been to refuse to participate in discovery in good faith (such as by providing the feedback SEL has requested or by engaging in meet-and-

---

[9]     For any UL material specific to the Ovalles' cells, which have always been in scope, SEL should have produced this material right away in 2014, certainly by 8/29/2016, and in all events by 1/27/2017.

confers prior to motion practice), to then misrepresent to the Court the substance of the documents SEL has produced (such as the substance of both SEL's non-electronic document production and SEL's production from e-mails and non-electronic documents), and to demand severe sanctions (despite suffering no prejudice) that will avoid a review some or all of the merits of their claims. This behavior, which runs directly contrary to the obligations imposed by the Federal Rules of Civil Procedure, cannot be allowed.

(SEL Mem. (ECF 130-1) at p. 4).

The procedural history set forth above and the many pleadings in this case reveal the truth.  In fact, plaintiffs have made repeated attempts to meet and confer with SEL throughout fact discovery.  Further, plaintiffs have fully supported our positions regarding SEL's discovery failures and violations of the Court's discovery orders with facts and law. SEL has had numerous opportunities to demonstrate in any way a lack of good faith on the part of plaintiffs and to counter plaintiffs' demonstrations of SEL's discovery failures and violations of the Court's discovery orders if it could (*see* ECF 47, 55, 71, 76, 79, 102/104, 108, 114, 119, 126, and 130).  It has not and cannot.  There is no basis for this claim.

Plaintiffs' modus operandi is to insist that SEL comply with the Federal Rules of Civil Procedure so that there can be a fair trial on the merits.

## **CONCLUSION**

For the foregoing reasons, plaintiffs respectfully request that SEL's Motion To Reconsider be denied.

Dated:  March 17, 2017                Respectfully submitted,


PLAINTIFF WANDA OVALLES, INDIVIDUALLY
AND P.P.A ADRIAN OVALLES, AND WILSON
OVALLES

By: */s/ Miriam Weizenbaum*

DELUCA & WEIZENBAUM, LTD.
Amato A. DeLuca
Miriam Weizenbaum
199 N. Main Street
Providence, RI 02905
Telephone:  (401) 453-1500
Facsimile:  (401) 453-1501
bud@delucaandweizenbaum.com
miriam@delucaandweizenbaum.com

*Attorneys for Plaintiff Wilson Ovalles*

SHIPMAN & GOODWIN LLP
James. W. Bergenn (*pro hac vice*)
Mark K. Ostrowski (*pro hac vice*)
William J. Ronalter (*pro hac vice*)
Christopher J. Cahill (*pro hac vice*)
One Constitution Plaza
Hartford, CT 06103-1919
Telephone: (860) 251-5000
Facsimile:   (860) 251-5218
jbergen@goodwin.com
mostrowski@goodwin.com
wronalter@goodwin.com
ccahill@goodwin.com

*Attorneys for Plaintiff Wanda Ovalles, on behalf of
herself and her son, A.O.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 17, 2017, the foregoing memorandum in opposition was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's CM/ECF system.

<u>/s/ *Miriam Weizenbaum*     </u>